**Case No. 20-2330**

_____

# UNITED STATES COURT OF APPEALS
# FOR THE FOURTH CIRCUIT

_____

UNITED STATES OF AMERICA, *ex rel.* DEBORAH SHELDON, Executrix of
the Estate of Troy Sheldon, *et al.*, *Plaintiff-Appellants*,

v.

ALLERGAN SALES, LLC, *et al.*, *Defendant-Appellees*.

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
Case No. 1:14-cv-02535-ELH
The Honorable Ellen L. Hollander, U.S. District Judge

═══════════════════════════════════

## PETITION FOR *EN BANC* REHEARING OF
## PLAINTIFF-APPELLANT, DEBORAH SHELDON,
## EXECUTRIX OF THE ESTATE OF TROY SHELDON

═══════════════════════════════════

Gregory M. Utter
Joseph M. Callow, Jr.
Paul R. Kerridge
Collin L. Ryan
KEATING MUETHING & KLEKAMP PLL
One East Fourth Street, Suite 1400
Cincinnati, OH 45202

Joel D. Hesch,
THE HESCH FIRM, LLC
3540 Ridgecroft Dr.
Lynchburg, VA 24503

*Attorneys for Plaintiff-Appellant*

# DISCLOSURE STATEMENT

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

**DISCLOSURE STATEMENT**

- In civil, agency, bankruptcy, and mandamus cases, a disclosure statement must be filed by **all** parties, with the following exceptions: (1) the United States is not required to file a disclosure statement; (2) an indigent party is not required to file a disclosure statement; and (3) a state or local government is not required to file a disclosure statement in pro se cases. (All parties to the action in the district court are considered parties to a mandamus case.)
- In criminal and post-conviction cases, a corporate defendant must file a disclosure statement.
- In criminal cases, the United States must file a disclosure statement if there was an organizational victim of the alleged criminal activity. (See question 7.)
- Any corporate amicus curiae must file a disclosure statement.
- Counsel has a continuing duty to update the disclosure statement.

No. __20-2330__        Caption: __United States ex rel. Deborah Sheldon, et al. v Allergan Sales, LLC__

Pursuant to FRAP 26.1 and Local Rule 26.1,

__Deborah Sheldon, Executrix of the Estate of Troy Sheldon__
(name of party/amicus)

who is _____ Appellant _____ , makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1.    Is party/amicus a publicly held corporation or other publicly held entity?    ☐YES ☑NO

2.    Does party/amicus have any parent corporations?    ☐YES ☑NO
      If yes, identify all parent corporations, including all generations of parent corporations:

3.    Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?    ☐YES ☑NO
      If yes, identify all such owners:

4.     Is there any other publicly held corporation or other publicly held entity that has a direct
financial interest in the outcome of the litigation?     ☐YES ☑NO
If yes, identify entity and nature of interest:

5.     Is party a trade association? (amici curiae do not complete this question)   ☐YES ☑NO
If yes, identify any publicly held member whose stock or equity value could be affected
substantially by the outcome of the proceeding or whose claims the trade association is
pursuing in a representative capacity, or state that there is no such member:

6.     Does this case arise out of a bankruptcy proceeding?     ☐YES ☑NO
If yes, the debtor, the trustee, or the appellant (if neither the debtor nor the trustee is a
party) must list (1) the members of any creditors' committee, (2) each debtor (if not in the
caption), and (3) if a debtor is a corporation, the parent corporation and any publicly held
corporation that owns 10% or more of the stock of the debtor.

7.     Is this a criminal case in which there was an organizational victim?   ☐YES ☑NO
If yes, the United States, absent good cause shown, must list (1) each organizational
victim of the criminal activity and (2) if an organizational victim is a corporation, the
parent corporation and any publicly held corporation that owns 10% or more of the stock
of victim, to the extent that information can be obtained through due diligence.

Signature: /s/ Gregory M. Utter       Date:    12/22/2020

Counsel for: Appellant

- 2 -     **Print to PDF for Filing**

# Table of Contents

DISCLOSURE STATEMENT ................................................................. i

I.      RULE 35(B)(1) STATEMENT ...................................................1

II.     BACKGROUND ...........................................................................4

III.    ARGUMENT.................................................................................7

   A.    The Majority's Creation of a Singular "Threshold" Test for All Three FCA Scienter Standards Runs Contrary to the FCA, Supreme Court Precedent, and This Court's and Other Circuit Courts' Precedent .......7

        1.    The Majority's "Threshold Requirement" Misinterprets the FCA's Three Separate Scienter Standards...........................7

        2.    The Majority's Holding Improperly Negates Any Factual Analysis of the Actual Intent of the Defendant .......................10

        3.    The Majority's Threshold Test Precluded Discovery on Fact Issues Relating to Defendant's Obligations under the Rebate Agreement ....................................................................12

   B.    The Majority's "Warned Away" Analysis Runs Contrary to Precedent of This Court and Other Circuit Courts................................13

   C.    *En Banc* Review Is Necessary Because of the Far-Reaching and Negative Impact the Majority's Opinion Will Have on FCA Cases and Government Enforcement Now and in the Future.............................16

IV.     CONCLUSION............................................................................17

CERTIFICATE OF COMPLIANCE......................................................19

CERTIFICATE OF SERVICE .............................................................20

# Table of Authorities

## Cases

*Astra USA, Inc. v. Santa Clara County*,
    563 U.S. 110 (2011) ...................................................................................... 5

*E.I. du Pont de Nemours & Co. v. Kolon Indus.*,
    637 F.3d 435 (4th Cir. 2011) .................................................................... 12

*Halo Elecs., Inc. v. Zimmer, Inc.*,
    136 S. Ct. 1923 (2016)...........................................................2, 7, 10, 11, 12

*Heckler v. Community Health Servs. of Crawford Cnty., Inc.*,
    467 U.S. 51 (1984)........................................................................................ 12

*Purcell v. MWI Corp.*,
    807 F.3d 281 (D.C. Cir. 2015) ....................................................... 3, 14, 15

*RadLAX Gateway Hotel, LLC v. Amalgamated Bank*,
    566 U.S. 639 (2012) ........................................................................................ 8

*Safeco Ins. Co. of Am. v. Burr*,
    551 U.S. 47 (2007) ............................................................. 9, 10, 11, 12, 14

*Taylor v. Grubbs*,
    930 F.3d 611 (4th Cir. 2019) ....................................................................... 8

*Unicolors, Inc. v. H&M Hennes & Mauritz, L.P.*,
    142 S. Ct. 941 (2022)..................................................................................... 11

*United States ex rel. Drakeford v. Tuomey*,
    792 F.3d 364 (4th Cir. 2015) ................................................................ 3, 14

*United States ex rel. Lutz v. Mallory*,
    988 F.3d 730 (4th Cir. 2021) ................................................................ 3, 14

*United States ex rel. Oliver v. Parsons Co.*,
    195 F.3d 457 (9th Cir. 1999) ............................................................... 2, 12

*United States ex rel. Phalp v. Lincare Holdings, Inc.*,
    857 F.3d 1148 (11th Cir. 2017) ........................................ 2, 9, 12

*United States ex rel. Sheldon v. Allergan Sales, LLC*,
    24 F.4th 340 (4th Cir. Jan. 25, 2022) .................................. *passim*

*Wahi v. Charleston Area Med. Ctr., Inc.*,
    562 F.3d 599 (4th Cir. 2009) ................................................ 8, 9

### Statutes and Regulations

31 U.S.C. § 3729 ............................................................................ 1, 7

42 U.S.C. § 1396r-8 .......................................................................... 4

56 Fed. Reg. 7049 (Feb. 21, 1991) ................................................ 4, 5

72 Fed. Reg. 39142 (July 17, 2007).................................................. 5

81 Fed. Reg. 5170 (Feb. 1, 2016) ...................................................... 6

### Rules

Fed. R. App. P. 32 ............................................................................ 19

Fed. R. App. P. 35 ........................................................................ 1, 19

Fed. R. Civ. P. 12 .............................................................................. 2

### Other Authorities

Black's Law Dictionary (5th ed. 1979) ........................................... 11

Restatement (Second) of Torts § 526 (1977) ................................. 11

S. Rep. No. 99-345.......................................................................... 16

## PETITION FOR *EN BANC* REHEARING

## I.    RULE 35(B)(1) STATEMENT

The False Claims Act ("FCA"), 31 U.S.C. § 3729, is the Government's primary litigation weapon to fight government fraud.  A divided panel interpreted the FCA so as to eliminate two of the three bases for demonstrating a "knowing" violation—in a "judicial overhaul of the [FCA]."  *United States ex rel. Sheldon v. Allergan Sales, LLC*, 24 F.4th 340, 357 (4th Cir. 2022) (Wynn, J., dissenting).  The full Court should review the majority's opinion *en banc* for at least three reasons.

***First***, the majority's opinion—rejecting the Department of Justice's amicus position—redefined "knowledge" under the FCA and improperly created a singular, new "threshold" test for knowing violations even though the statute identifies three separate standards ("has actual knowledge," "acts in deliberate ignorance," or "acts in reckless disregard").  31 U.S.C. § 3729(b)(1).  The majority's opinion means that a defendant's identification of an "objectively reasonable" interpretation of a legal requirement, claimed to be ambiguous, insulates its conduct even if: (a) the defendant actually knew its conduct was wrong at the time; (b) the interpretation proffered in litigation differs from the defendant's actual contemporaneous interpretation; or (c) the defendant deliberately avoided determining the correct interpretation when the claim was submitted.  The majority's opinion makes a defendant's actual and contemporaneous state of mind irrelevant as to the

"knowledge" inquiry under the FCA, and immune from discovery. This holding conflicts with:

- *Halo Elecs., Inc. v. Zimmer, Inc.*, 136 S. Ct. 1923, 1933 (2016) (culpability is measured against actor's knowledge at the time of conduct, and rejecting argument that defendants may rely on attorney's post hoc rationalization to negate scienter);

- *United States ex rel. Phalp v. Lincare Holdings, Inc.*, 857 F.3d 1148, 1155 (11th Cir. 2017) (rejecting argument that defendants escape liability merely because conduct conforms to reasonable interpretation of ambiguous law); and

- *United States ex rel. Oliver v. Parsons Co.*, 195 F.3d 457, 463, n.3 (9th Cir. 1999) (rejecting argument that defendants escape liability merely because conduct fell within reasonable interpretation of law; holding instead that defendants can assert that defense only if they actually relied on interpretation).

***Second***, the majority's opinion conflicts with this Circuit's and sister circuits' precedent by holding that whether a defendant might have been "warned away" from its interpretation of a statute is a purely legal issue rather than a mixed issue of fact and law. Further, the majority errs in narrowing what guidance a court may consider when conducting the "warned away" analysis—ignoring well-pleaded factual allegations at the motion to dismiss stage in a manner inconsistent with Fed. R. Civ. P. 12(b)(6). *See Sheldon*, 24 F.4th at 351, n.3. In this case, the underlying Complaint contains specific allegations that Defendant was in fact warned away from its interpretation of the statute on multiple occasions, including a specific letter that Defendant wrote to CMS asking CMS to change its views on the requirements at

issue—which CMS rejected.  J.A. 59-61.  The majority's opinion ignored these

factual allegations as "simply irrelevant" by creating a purely legal inquiry.  *Sheldon*,

24 F.4th at 358 (Wynn, J., dissenting).  This holding conflicts with:

- *United States ex rel. Lutz v. Mallory*, 988 F.3d 730, 737 (4th Cir. 2021) (sources of authoritative guidance for purposes of warned away include warnings provided by legal counsel);

- *United States ex rel. Drakeford v. Tuomey*, 792 F.3d 364, 376 (4th Cir. 2015) (affirming district court's grant of new trial because it was prejudicial error for court to exclude evidence that defendant was warned by attorney that its practices violated the law); and

- *Purcell v. MWI Corp.*, 807 F.3d 281, 288 (D.C. Cir. 2015) (whether guidance warned a defendant away from its interpretation is "not [a] purely legal" question).

***Third***, the majority's opinion guts the Government's ability to pursue fraud

under the FCA.  As Judge Wynn noted:

> [T]he majority opinion effectively neuter[s] the False Claims Act—the Government's primary tool for fighting fraud—by eliminating two of its three scienter standards (actual knowledge and deliberate ignorance) and replacing the remaining standard with a test (objective recklessness) that only the dimmest of fraudsters could fail to take advantage of.

*Sheldon*, 24 F.4th at 357 (Wynn, J., dissenting).  The majority's opinion allows

defendants to avoid discovery and judicial review of their conduct by: (a) claiming

ambiguity in a law; and (b) asserting a self-serving but "objectively reasonable"

interpretation, even one newly minted for litigation and inconsistent with the actual

facts and well-pleaded allegations.  The majority's opinion "allows fraudsters to

escape any liability so long as they can come up with a post hoc legal rationale that passes the smell test." *Id.* The majority's opinion tips the scale toward fraudsters. The public importance of this case cannot be overstated.

The majority's opinion conflicts with Supreme Court precedent, fails to follow in-circuit precedent, and relates to an issue of substantial import. These considerations support the Court's review of this case *en banc*.

## II.    BACKGROUND

The underlying case focuses on whether Defendant properly reported its Best Price for Medicaid eligible drugs to the Government. The Medicaid Rebate Statute ("Rebate Statute") requires drug manufacturers, like Defendant, to report to the Government their drugs' lowest prices (*i.e.*, "Best Price"), inclusive of all rebates, discounts, and other price concessions given to any entity or multiple entities. 42 U.S.C. § 1396r-8(c)(1)(C); 56 Fed. Reg. 7049. Best Price prevents drug manufacturers from charging the Government higher prices than those available on the open market, and requires manufacturers to report the final lowest price "actually realized" by a manufacturer for a single drug unit. 56 Fed. Reg. 7049. Manufacturers must also sign and agree to a Rebate Agreement; Section I(d) of the Rebate Agreement specifies that a manufacturer's Best Price is "the lowest price at which the manufacturer sells the [drug] to *any* purchaser in the United States in *any* pricing structure," and the price is "adjusted *by the manufacturer* if cumulative

discounts, rebates or other arrangements subsequently adjust the prices *actually realized*." *Id.* (emphasis added); *see also Astra USA, Inc. v. Santa Clara County*, 563 U.S. 110, 118 (2011) (Rebate Statute and Rebate Agreement are "one and the same").

In the Complaint, Appellant alleges Defendant provided multiple discounts/rebates for the same drug unit, but spent years knowingly reporting only one of those discounts/rebates to the Government in its Best Price Report—violating the FCA. J.A. 67-68. Appellant alleges Defendant actually knew it was violating the law, deliberately ignored its reporting obligations, and recklessly disregarded authoritative guidance. *Id.* at 106. Appellant alleges the damages exceed $680 million before trebling. *Id.* at 71-106.

Appellant also alleges Defendant ignored multiple guidances and was warned away multiple times from its position. *Id.* at 51-59. For example, CMS's 2007 final regulations and accompanying comments provide that manufacturers must aggregate any price concessions to calculate the net lowest price "actually realized." *See* 72 Fed. Reg. 39142, 39201. This guidance informed manufacturers that they must aggregate discounts to distinct entities in the distribution chain when calculating Best Price. *Id.* at 39199. In 2016, CMS reiterated this position regarding the requirements of the Rebate Statute and Agreement—all rebates, discounts, and pricing arrangements that affect the price actually realized by the manufacturer for

a single drug unit must be combined, even if the price concessions are received by two distinct entities.  81 Fed. Reg. 5170, 5252-53.

Recognizing the need to aggregate discounts, Defendant actually wrote to CMS in 2007 and asked CMS to change its view that manufacturers must aggregate discounts.  J.A. 239.  When CMS made no changes, Defendant held internal high-level meetings to address its obligations and initiated a data audit to eliminate *some* double discounts, but still failed to include all discounts and rebates in its Best Price Reports.  *Id.* at 68-70.  Defendant's direct communications with CMS regarding the Best Price Statute; CMS's rejection of Defendant's interpretation of the Best Price Statute; and Defendant's subsequent decisions not to change its Best Price Reports constitute actual knowledge and deliberate ignorance of authoritative guidance under the FCA—especially at the motion to dismiss stage.

After the Complaint was unsealed, Defendant filed a Motion to Dismiss.  J.A. 211.  The district court agreed that Appellant's interpretation of the Best Price Statute was plausible, but improperly concluded: (a) the Statute was ambiguous; and (b) a reasonable misinterpretation of a purportedly ambiguous statute can never constitute a false claim under the FCA as a matter of law.  J.A. 350-62.

On appeal, the panel issued a split decision affirming the district court. The majority: (a) rejected the position of Appellant and the DOJ in its amicus brief; (b) created a singular "threshold requirement" precluding courts from analyzing the

actual knowledge and deliberate ignorance prongs of FCA scienter (and precluding a relator from conducting any fact discovery on scienter); and (c) made the "warned away" analysis a purely legal issue rather than a mixed issue of fact and law, and narrowed what guidance a court may consider when conducting that analysis. *Sheldon*, 24 F.4th at 343-56.

In dissent, Judge Wynn lamented the "judicial overhaul" of the FCA and explained the majority's opinion would have catastrophic effects for the Government when fighting fraud. *Id.* at 357 (Wynn, J., dissenting). Judge Wynn highlighted that the majority ignored CMS's consistent guidance. *Id.* at 371-77. Judge Wynn also noted that all of the cases the majority cited were unpublished or easily distinguishable, and all but one either predated or failed to distinguish the Supreme Court's decision in *Halo. Id.* at 364-65 ("It's hard to see much daylight between *Halo* and the present case.").

## III. ARGUMENT

### A. The Majority's Creation of a Singular "Threshold" Test for All Three FCA Scienter Standards Runs Contrary to the FCA, Supreme Court Precedent, and This Court's and Other Circuit Courts' Precedent

#### 1. The Majority's "Threshold Requirement" Misinterprets the FCA's Three Separate Scienter Standards

Under the FCA, defendants are liable for "knowingly" submitting false claims. 31 U.S.C. § 3729(b)(1). A knowing actor: (a) actually knows the claim is

7

false; (b) deliberately ignores whether the claim is false; *or* (c) recklessly disregards information indicating the claim is false. *Id.*

Congress wrote the statute in the disjunctive, meaning relators need only allege one of the three alternatives. *See Wahi v. Charleston Area Med. Ctr., Inc.*, 562 F.3d 599, 608 (4th Cir. 2009). The majority's creation of a singular "threshold requirement" for the FCA ignores a cardinal rule of statutory construction—courts must give effect to all words in the statute. *See RadLAX Gateway Hotel, LLC v. Amalgamated Bank*, 566 U.S. 639, 645 (2012) (citation omitted); *see also Taylor v. Grubbs*, 930 F.3d 611, 617 (4th Cir. 2019).

The majority rejected DOJ's long-standing interpretation (as set forth in its amicus brief) of the three distinct FCA scienter prongs, and created a singular threshold requirement under which a defendant's identification of an objectively reasonable interpretation of a purportedly ambiguous requirement precludes *all* analysis of scienter. *Sheldon*, 24 F.4th at 349. The majority improperly collapsed the three FCA scienter standards into one target. The proper way to view the FCA's scienter standards is as three distinct targets consistent with the disjunctive language of the statute. It may be easier to hit the "reckless disregard" target in some cases, but hitting the "deliberate ignorance" or "actual knowledge" targets is possible even if the first target is missed.

The majority based its threshold test on *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47 (2007). In *Safeco*, the Supreme Court considered the notice provisions of the Fair Credit Reporting Act ("FCRA") and discussed "willful" violations of the FCRA's notice requirements. *Id.* at 59. The Court ruled that reckless behavior in the FCRA context occurs when the defendant's statutory interpretation is "objectively unreasonable." *Id.* at 69. But *Safeco* did not announce a definition of recklessness that applies in other statutory contexts, and the Court specifically noted that "action falling within the knowing subcategory does not simultaneously fall within the reckless alternative." *Id.* at 57, 60, 68. Nothing in the Court's discussion of the "willful" standard under the FCRA suggests that it applies to all three separate and distinct standards under the FCA. Nor does anything in *Safeco* support a singular, uniform "objective" threshold requirement applicable to all three FCA "knowledge" standards. At least one circuit court has explicitly rejected this argument. *See Phalp,* 857 F.3d at 1155 (holding relator could prove actual knowledge despite not proving reckless disregard). The actual knowledge and deliberate ignorance standards cannot be mere reiterations of the reckless disregard standard, but must have independent force. *See Wahi,* 562 F.3d at 608.

While reckless disregard may be the easiest target for a relator to hit in certain factual circumstances, missing that one target does not equate to missing all three targets. The majority's attempt to collapse all three separate standards into a singular

threshold target under the FCA is fundamentally wrong and ignores that, to capture different kinds of knowledge, Congress included three separate and independent ways of establishing a "knowing" violation.

### 2. The Majority's Holding Improperly Negates Any Factual Analysis of the Actual Intent of the Defendant

Worse yet, the Court misapplied *Safeco* for the proposition that a defendant's subjective intent is not relevant to FCA scienter in cases involving legal requirements. *Sheldon*, 24 F.4th at 355, n.5. The majority concluded that so long as a defendant claims that the requirement is ambiguous and can assert a "reasonable interpretation" at the motion to dismiss stage, the defendant's actual knowledge and subjective intent are irrelevant. Whether the defendant actually held the proffered interpretation matters not; no discovery is allowed for relator to challenge whether defendants actually held the interpretation. In doing so, the majority's opinion effectively encouraged—and surely opened the door to—post hoc interpretations developed by counsel for the first time in litigation.

This holding conflicts with the Supreme Court's decision in *Halo*. In *Halo*, the Court explained that knowledge is determined by assessing what the defendant knew at the time—and held nothing in *Safeco* suggests otherwise. *Halo*, 579 U.S. at 105-06. Further, the Court explained that defendants cannot escape liability because an attorney has sufficient ingenuity to muster a post hoc defense. *Id.* at 105. *Halo* confirms that knowledge is a subjective, factual inquiry. *Id.* at 105-06;

*Unicolors, Inc. v. H&M Hennes & Mauritz, L.P.*, 142 S. Ct. 941, 946 (2022) ("Both case law and the dictionary tell us that "knowledge" has historically meant and still means the fact or condition of being aware of something… [t]he word "knowledge" means actual, subjective awareness of both the facts and the law."); *see also* Knowledge, Black's Law Dictionary (5th ed. 1979) (*e.g.*, "assurance of fact or proposition … firm belief," "state of mind that one considers that he knows"); Restatement (Second) of Torts § 526 (1977) (A defendant has knowledge of common-law fraudulent misrepresentation if he "knows or believes that the matter is not as he represents it to be.").

The majority erroneously rejected the Supreme Court's instructions in *Halo* on how to measure knowledge and instead relied on a footnote in *Safeco*. *Sheldon*, 24 F.4th at 347-49. The majority's reasoning suffers from two flaws. First, *Halo* came after *Safeco* and provided an important clarification that the majority cannot simply dismiss: "Nothing in *Safeco* suggests that we look to facts that the defendant neither knew nor had reason to know at the time he acted." *Halo*, 579 U.S. at 105-06. Second, the majority's interpretation of *Safeco* is incorrect. As the *Safeco* Court noted, "it would defy history and current thinking to treat a defendant who merely adopts one [objectively reasonable] interpretation [of a statute] as a knowing or reckless violator." 551 U.S. at 70, n.20. Defendants cannot "adopt" an interpretation they reject or belatedly identify. *Halo* demonstrates that post hoc interpretations do

not satisfy *Safeco*. Similar to *Halo*, precedent from this Court's sister circuits confirm that intent is a factual inquiry and not addressed through post hoc legal argument. *See Phalp*, 195 F.3d at 463-64; *Oliver*, 195 F.3d at 463-64.

The error here is further magnified because the majority's opinion admittedly ignored well-pleaded allegations in the Complaint that specifically countered the post hoc argument raised by Defendant's counsel in the Motion to Dismiss. *E.I. du Pont de Nemours & Co. v. Kolon Indus.*, 637 F.3d 435, 440 (4th Cir. 2011) ("[A] judge must accept as true all of the factual allegations contained in the complaint" and must "draw all reasonable inferences in favor of the plaintiff."). Appellant alleges that Defendant knew its conduct was wrong at the time, and the allegations in the Complaint are inconsistent with the post hoc interpretation proffered by Defendant. J.A. 62-70. The majority wrongly concluded that a factual inquiry into Defendant's actual state of mind and subjective intent was irrelevant. This is simply wrong.

## 3. The Majority's Threshold Test Precluded Discovery on Fact Issues Relating to Defendant's Obligations under the Rebate Agreement

When discussing a purported ambiguity in the Rebate Statute, the majority failed to consider the Rebate Agreement's requirement that all "ambiguities are to be interpreted in a manner that best effectuates the statutory scheme." *See* J.A. 221; *see also Heckler v. Community Health Servs. of Crawford Cnty., Inc.*, 467 U.S. 51,

63-64 (1984) (parties seeking public funds have duty to determine whether claims for payment are valid when faced with regulatory ambiguity).

In light of the Rebate Agreement, fact issues exist regarding whether Defendant actually knew or deliberately ignored its legal and contractual obligations. This requires determining: (a) whether Defendant identified an ambiguity at the time or its attorney concocted a new interpretation post hoc; and (b) what efforts Defendant took to "best effectuate" the statutory scheme after identifying the ambiguity. But the majority's opinion precludes any discovery on these fact questions. This result is particularly egregious where (as here) Appellant alleges Defendant knew its conduct did not best effectuate the statute, but instead resulted in the Government paying more than private buyers. J.A. 32-41.

\*    \*    \*

The majority's new "threshold" requirement ignores the FCA's structure and improperly ignores the factual inquiry into fraudulent intent. The majority's opinion should be reviewed *en banc*.

## B.    The Majority's "Warned Away" Analysis Runs Contrary to Precedent of This Court and Other Circuit Courts

The majority's opinion disregarded this Court's precedent on whether a defendant might have been warned away from its interpretation, holding that the "warned away" analysis is purely legal and not a mixed issue of fact and law. In doing so, the majority ignored Appellant's well-pleaded allegations that

authoritative guidance created fact issues precluding dismissal at the motion to dismiss stage.

A defendant's interpretation of a statute is not objectively reasonable if guidance "might" have warned the defendant away from its interpretation. *Safeco*, 551 U.S. at 70. Warned away has always been a mixed issue of law and fact, and not a purely legal issue. *Purcell*, 807 F.3d at 288; *Mallory*, 988 F.3d at 737; *Drakeford*, 792 F.3d at 376.

The majority made two connected errors when addressing warned away. First, it held that *only* agency guidance and judicial opinions constitute "authoritative guidance." *Sheldon*, 24 F.4th at 353-54. But in *Mallory*, this Court expressly held that other sources, such as advice from counsel, can "warn away" a defendant from its interpretation. 988 F.3d at 737. The majority's opinion and *Mallory* are in direct conflict on this point and full Court review is necessary to resolve that conflict. Further, the majority held that agencies must provide "a high level of specificity" that would "clearly state[]" what a defendant is required to do. *Sheldon,* 24 F.4th at 353-54. The majority's opinion requires an agency to anticipate every possible type of fraud before it happens and issue preemptive guidance; anything less gives fraudsters free license to seek a windfall—under the impenetrable protection of an ambiguity.

Second, grounded in its narrow definition of "authoritative guidance," the majority ruled at the motion to dismiss stage that no guidance warned Defendant away from its reporting methodology. The majority stated in a footnote that it was proper to resolve warned away on the pleadings because it "depends upon interpretation of legal materials." *Id.* at 351, n.3. The majority's narrow definition of authoritative guidance means warned away is *always* a legal issue—that contradicts other circuits' admonition that warned away is a fact issue. *See, e.g.*, *Purcell*, 807 F.3d at 288 (warned away is "not [a] purely legal" issue).

Again, in this case, the Complaint has extensive factual allegations outlining guidance that Defendant was in fact warned away from the interpretation proffered by its counsel in the district court. J.A. 55-62. The factual allegations include direct correspondence between Defendant, its counsel, and CMS regarding the need to aggregate rebates under the Rebate Statute. J.A. 59-61. In addition, Appellant alleges that Defendant held internal high-level meetings and initiated a data audit to eliminate double discounts. J.A. 69-70. These factual allegations go to the heart of the warned away analysis and the issue of fraudulent intent. The majority's opinion, however: (a) ignored these well-pleaded factual allegations; and (b) denied Appellant the opportunity to develop these allegations with discovery.

The majority's warned away analysis conflicts with prior precedent of this Court and other Circuit Courts and should be reviewed *en banc*.

C.   *En Banc* **Review Is Necessary Because of the Far-Reaching and Negative Impact the Majority's Opinion Will Have on FCA Cases and Government Enforcement Now and in the Future**

The majority's new "threshold" test and warned away analysis will reshape FCA jurisprudence nationwide and impact hundreds of FCA cases now and in the future. The majority's opinion amounts to a judicial overhaul that effectively neuters the FCA. *Sheldon*, 24 F.4th at 357 (Wynn, J., dissenting).

The FCA is the Government's primary tool to combat fraud, and the Government long ago recognized it needed "a more effective weapon against Government fraud." S. Rep. No. 99-345, at 3, 1986 U.S.C.C.A.N. at 5266. Between $100 and $360 billion are lost to health care fraud each year—and these numbers are growing. Of that amount, the Government's FCA recoveries make up an "ever-shrinking teaspoon" that is declining each year. *Sheldon*, 24 F.4th at 377 (Wynn, J., dissenting). The DOJ recognized the great importance of this case and its impact on Government enforcement efforts around the country, and submitted an amicus brief plainly setting forth the United States' position—which the majority rejected.

Judge Wynn aptly identified the devastating effect of the majority's over-reach, explaining the "sad truth" that fraud against the Government "*does* pay" and "getting away with it is also getting easier." *Id.* Unfortunately, the majority's decision only worsens this trend by joining a line of cases that have "thwart[ed] the effectiveness of the [FCA] by adopting overly 'restrictive'" scienter standards. *Id.*

16

The majority's decision effectively provides an impenetrable shield "that only the dimmest of fraudsters could fail to take advantage of." *Id.* at 357.

The majority's opinion will take billions out of the Government fisc and provide an unlawful windfall for fraudsters. This case is a matter of exceptional importance.

## IV.    CONCLUSION

Appellant respectfully requests that the full Court review this case e*n banc*.

Respectfully submitted.

/s/ Gregory M. Utter
Gregory M. Utter
Joseph M. Callow, Jr.
Paul R. Kerridge
Collin L. Ryan
KEATING MUETHING & KLEKAMP PLL
One East Fourth Street, Suite 1400
Cincinnati, OH 45202
Tel: 513.579.6400
Fax: 513.579.6457
Email: gmutter@kmklaw.com
jcallow@kmklaw.com
pkerridge@kmklaw.com
cryan@kmklaw.com

Joel D. Hesch,
THE HESCH FIRM, LLC
3540 Ridgecroft Dr.
Lynchburg, VA 24503
Phone: 434.229.8677
Email: joel@howtoreportfraud.com

## **CERTIFICATE OF COMPLIANCE**

I hereby certify that this petition complies with the type-volume limitation of Fed. R. App. P. 35(b)(2)(A) because the word-processing system used to prepare the brief, Microsoft Word, indicates that this brief contains 3,832 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

This petition complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. 32(a)(6) because this petition has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman font.

*/s/ Gregory M. Utter*
Gregory M. Utter

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on March 25, 2022, I electronically filed the foregoing Petition for *En Banc* Rehearing with the Clerk of the Court for the United States Court of Appeals for the Fourth Circuit by using the appellate CM/ECF system.

Unless otherwise stated below, the participants in the case are registered CM/ECF users and service will be accomplished by the appellate CM/ECF system.

**<u>Service via Email:</u>**

Jennifer Gregory
Deputy Attorney General
California Department of Justice
2329 Gateway Oaks Drive, Suite 200
Sacramento, CA 95833
Jennifer.gregory@doj.ca.gov
Sharon.brecht@doj.ca.gov
*Representative for the State of California*

Robert Teitelman
Gregory O'Connell
Assistant Attorneys General
State of Connecticut
165 Capitol Avenue
Hartford, CT 06106
robert.teitelman@ct.gov
gregory.o'connell@ct.gov
*Representative for the State of Connecticut*

George Codding
Senior Assistant Attorney General
Colorado Medicaid Fraud Control Unit
Ralph L. Carr Judicial Building
1300 Broadway, 9th Floor
Denver, CO 80203
George.codding@coag.gov
*Representative for the State of Colorado*

Edward K. Black
Deputy Director
Medicaid Fraud Control Unit
820 North French Street, 5th Floor
Wilmington, DE 19801
edward.black@delaware.gov
*Representative for the State of Delaware*

Catherine Jackson
Christopher Pascual
Office of the Attorney General for the District of Columbia
400 6th St., NW
Washington, DC 20001
catherine.jackson@dc.gov
christopher.pascual@dc.gov
*Representative for the District of Columbia*

Jill Bennett
Assistant Attorney General
Florida Office of the Attorney General
Medicaid Fraud Control Unit
PL-01, The Capitol
Tallahassee, FL
jill.bennett@myfloridalegal.com
*Representative for the State of Florida*

Sara Vann
Assistant Attorney General
Office of the Attorney General Chris Carr
Medicaid Fraud Division
200 Piedmont Avenue, SE
19th Floor, West Tower
svann@law.ga.gov
*Representative for the State of Georgia*

Dawn Shigezawa
Department of the Attorney General
425 Queen Street
Honolulu, HI 96813
dawn.s.shigezawa@hawaii.gov
*Representative for the State of Hawaii*

Melissa Taormina Guske
Assistant Attorney General
Office of the Illinois Attorney General
100 West Randolph Street
Chicago, IL 60601
mguske@atg.state.il.us
*Representative for the State of Illinois*

Tricia Dieleman
Assistant Attorney General
Office of the Attorney General of Iowa
321 E. 12th Street, Lucas State Office Building, 3rd Floor
Des Moines, IA 50319
tricia.dieleman@dia.iowa.gov
*Representative for the State of Iowa*

Robert Yates
Deputy Attorney General
Office of Indiana Attorney General
8720 Castle Creek Parkway, Suite 250
Indianapolis, IN 46250
robert.yates@atg.in.gov
*Representative for the State of Indiana*

Robyn Dollar
Amanda Washington
Office of Attorney General
Commonwealth of Massachusetts
One Ashburton Place, 18th Floor
Boston, MA 02108
robyn.dollar@mass.gov
amanda.washington@state.ma.us
*Representatives for the Commonwealth of Massachusetts*

Raja Mishra
Office of Attorney General
State of Maryland
200 St. Paul Place, 20th Floor
Baltimore, MD 21202
rmishra@oag.state.md.us
*Representative for the State of Maryland*

Carl Hammaker
Assistant Attorney General
Michigan Department of Attorney General
P.O. Box 30218
Lansing, MI 48909
hammakerc@michigan.gov
*Representative for the State of Michigan*

James Clark
Assistant Attorney General
Office of the Minnesota Attorney General
445 Minnesota Street, Suite 900
St. Paul, MN 55101
james.clark@ag.state.mn.us
*Representative for the State of Minnesota*

Katherine Proctor
Julie James
Assistant Attorneys General
Office of the Attorney General
P.O. Box 201401
Helena, MT 59620
katherine.proctor@mt.gov
julie.james@mt.gov
*Representatives for the State of Montana*

Thomas Worboys
Senior Assistant Attorney General
Director, Medicaid Fraud Control Unit
New Hampshire Department of Justice
33 Capitol Street
Concord, NH 03301
thomas.t.worboys@doj.nh.gov
*Representative for the State of New Hampshire*

Charisse Penalver
Deputy Attorney General
Office of Attorney General New Jersey
25 Market Street, P.O. Box 094
Trenton, NJ 08625
penalverc@njdcj.org
*Representative for the State of New Jersey*

Amy Steelman
Senior Deputy Attorney General
Medicaid Fraud Control Unit
Office of the Attorney General
100 North Carson Street
Carson City, NV 89701
asteelman@ag.nv.gov
*Representative for the State of Nevada*

Zackary Shandler
Assistant Attorney General
Office of New Mexico Attorney General
408 Galisteo Street
Villagra Building
Santa Fe, NM 87501
zshandler@nmag.gov
*Representative for the State of New Mexico*

Matt Petracca
Assistant Attorney General
Attorney General's Office
North Carolina Department of Justice
5505 Creedmoor Road, Suite 300
Raleigh, NC 27612
mpetracca@ncdoj.gov
*Representative for the State of North Carolina*

Diana Elkind
Lotus Isip
Medicaid Fraud Control Unit
New York State Office of the Attorney General
28 Liberty Street
New York, NY 10005
diana.elkind@ag.ny.gov
lotus.isip@ag.ny.gov
*Representative for the State of New York*

Genevieve Allaire Johnson
James Dube
Nancy Ruffin
Medicaid Fraud Control Unit
Office of the Attorney General
150 South Main Street
Providence, RI 02903
gallaire@riag.ri.gov
jdube@riag.ri.gov
nruffin@riag.ri.gov
*Representatives for the State of Rhode Island*

Phillip Bangle
Assistant Attorney General
Office of Tennessee Attorney General
P.O. Box 20207
Nashville, TN 37202
phillip.bangle@ag.tn.gov
*Representative for the State of Tennessee*

Kerry Ascher
Assistant Attorney General
Office of the Texas Attorney General
P.O. Box 12548
Austin, TX 78711
kerry.ascher@oag.texas.gov
*Representative for the State of Texas*

Candice Deisher
Assistant Attorney General
Office of the Virginia Attorney General
202 North Ninth Street
Richmond, VA 23219
cdeisher@oag.state.va.us
MFCULitSupport@oag.state.va.us
*Representative for the Commonwealth of Virginia*

Carrie Bashaw
Assistant Attorney General
Washington State Attorney General's Office
1125 Washington Street SE
P.O. Box 40100
Olympia, WA 98504
carrie.bashaw@atg.wa.gov
*Representative for the State of Washington*

Katie Wilson
Assistant Attorney General
State of Wisconsin Department of Justice
17 W. Main Street
Madison, WI 53703
wilsonkm@doj.state.wi.us
*Representative for the State of Wisconsin*

**<u>Service via U.S. Mail:</u>**

Nicholas Diez
Assistant Attorney General
Office of Louisiana Attorney General
1885 N. Third. St.,
Baton Rouge, LA 70802
*Representative for the State of Louisiana*

Christopher Robinson
ATTN: Medicaid Fraud Control Unit
313 N.E. 21st Street
Oklahoma City, OK 73105
*Representative for the State of Oklahoma*

Elizabeth Anderson
Assistant Attorney General
ATTN: Medicaid Fraud Control Unit
Vermont Attorney General's Office
Montpelier, VT 05609
*Representative for the State of Vermont*

*/s/ Gregory M. Utter*
Gregory M. Utter